Case 1:20-cv-00005   Document 63   Filed on 10/07/21 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
October 07, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| AZUCENA C. OVALLE,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 1:20-cv-5 |
| KILOLO KIJAKAZI[1],<br>    Defendant. | §<br>§<br>§ | |

### **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits filed by Plaintiff Azucena C. Ovalle. Dkt. No. 1.

Having reviewed the record and the pleadings, the Court recommends that the petition be denied. The Administrative Law Judge's decision is clearly supported by substantial evidence.

### **I. Background**

This case comes down to a very specific issue; when did Ovalle become entitled to receive benefits as the wife of a retired husband?

On October 17, 2001, Jose Ovalle filed for his Social Security retirement insurance benefits. Dkt. No. 43-7, p. 2. On his application, he listed Estella Ovalle, someone other than the current Plaintiff, as his wife, with Josefina Ovalle and Mercedes Ovalle listed as his ex-wives. Id., pp. 2-3. He does not refer to the Plaintiff as his wife in his original filing. Id. Furthermore, there is nothing in the record to indicate whether the then existing wife, Estella Ovalle, was to receive any benefits as a result of Jose Ovalle's retirement.

On June 27, 2006, the Plaintiff filed an application for spousal insurance benefits based on being Ovalle's wife. Dkt. No. 43-5, p. 71. Then, on March 19, 2007, Jose Ovalle died. Dkt. No. 43-2, p. 78.

---

[1] The Plaintiff originally filed the complaint against Andrew M. Saul. Pursuant to FED. R. CIV. P. 25(d), Kilolo Kijakazi is substituted as the proper defendant. The District Clerk's Office shall update the docket and case caption to reflect this change.

1

On April 8, 2009, an Administrative Law Judge ("ALJ") found that the Plaintiff met the requirements for spousal insurance benefits, dating back to her 2006 application. Dkt. No. 43-2, p. 78.  The ALJ found that Jose Ovalle and the Plaintiff were in a common-law marriage under Texas law, dating back to April 1986. Id., p. 82.  The ALJ found that Jose Ovalle was a "bigamist" who "did not take the vows of matrimony seriously." Id., p. 86.  The ALJ further found that Jose Ovalle did not list the Plaintiff or their children on the application for benefits because he filed for benefits in Texas, while living with Estela Ovalle, while the Plaintiff and their children lived in Chicago. Id., pp. 86-87.  The ALJ opined that Jose Ovalle "was simply traveling back and forth between Chicago and Texas maintaining both relationships without the knowledge of either [the Plaintiff] or Estela Diaz Ovalle.  Since the application was filed in Texas, it is apparent he assumed the claimant would not find out about it as long as he continued to provide support." Id.

The ALJ found that the Plaintiff was entitled to spousal benefits dating back to 2006, when she filed her application. Dkt. No. 43-2, p. 78.  The Plaintiff filed a request for this decision to be reconsidered, arguing that the benefits should be retroactive to 2001, when Ovalle retired. Dkt. No. 43-3, p. 83.

It wasn't until July 10, 2013, that the Appeals Council remanded the case back to the ALJ.  According to the Appeals Council it was "unable to locate or redevelop the evidence" in her case. Dkt. No. 43-4, pp. 11-12.

On March 21, 2014, a different ALJ issued a decision, finding that the Plaintiff was entitled to spousal benefits dating back to 2006. Dkt. No. 43-6, pp. 6-11.  The ALJ found that Jose Ovalle did not inform SSA of his marriage when he filed for benefits and that SSA was unaware of the marriage until 2006, when the Plaintiff filed her application. Id.  Ovalle timely filed a request for this decision to be reconsidered, again asking for the benefits to be retroactive to 2001. Id., p. 16.

On May 12, 2017, once again, the Appeals Council remanded the case back to the ALJ because "the record upon which the Administrative Law Judge based the decision could not be located." Dkt. No. 43-6, p. 25.

On May 7, 2019, the ALJ – the same one who issued the second decision – found that the Plaintiff was only eligible for benefits dating back to 2006. Dkt. No. 43-1, pp. 30-34.  The ALJ, again, found that Jose Ovalle did not inform SSA of his marriage when he filed for benefits and that SSA was unaware of the marriage until 2006, when the Plaintiff filed her application. Id.  The Plaintiff, again, timely filed a request for reconsideration. Dkt. No. 43-1, p. 13.

On November 14, 2019, the Appeals Council denied the request for reconsideration, giving the Plaintiff a final administrative denial of her claim. Dkt. No. 43-1, pp. 13-14.

On January 9, 2020, the Plaintiff timely filed her complaint, challenging the administrative decision. Dkt. No. 1.

**II. Applicable Law**

The Court's review of the Commissioner's decision to deny disability benefits is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).

"Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  42 U.S.C. ' 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455.  The Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947).  "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." Orr v.

3

Commissioner of Social Security Administration, Civil No. 3:08-CV-1592-K, 2009 WL 2337793 at *9 (N.D. Tex. July 27, 2009) (citing Bagwell v. Barnhart, 338 F. Supp.2d 723, 735 (S.D. Tex. 2004)).

### III. Analysis

Allegations by pro se litigants must be given liberal construction to ensure that their claims are not unfairly dismissed because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). That latitude, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981).

As previously noted, this case is about a single question: when did the Plaintiff become entitled to claim benefits as the wife of a retired husband? The Plaintiff has already received benefits dating back to 2006, when she filed her application for benefits. She claims, however, that she is entitled to benefits dating back to 2001, when Jose Ovalle filed his application for retirement benefits. The Court finds that the Commissioner's decision, that the Plaintiff is only entitled to benefits dating back to 2006, is supported by substantial evidence.

### A. Application Date

There are several ways to determine when a person becomes eligible for spousal benefits. The first, and most obvious, is based on the date of their application for such benefits. If a person applies for spousal benefits "after the first month you could have been entitled to them, you may receive benefits for up to 6 months immediately before the month in which your application is filed." 20 C.F.R. § 404.621(a)(2). An application is considered filed "on the day it is received by an SSA employee at one of our offices or by an SSA employee who is authorized to receive it at a place other than one of our offices." 20 C.F.R. § 404.614(a). Under these provisions, the Plaintiff's application was filed in June 2006, when she filed her application. Because that date was "after the first month" that she was eligible for benefits, she would receive retroactive benefits going back to December 2005 — six months prior to that date. § 404.621(a)(2). The ALJ found that the Plaintiff filed her application in June 2006 and awarded retroactive benefits back to December 2005.

### B. Protective Filing Date

The second method is based on a "protective filing" date. If a person files for retirement benefits and names a current spouse on their application, the date of the application becomes a "protective filing" date for the spousal benefits. Social Security Program Operations Manual System (POMS) § GN 00204.010.[2]

What this means is that, if Jose Ovalle had listed the Plaintiff as his current spouse on application for retirement benefits, then the date of his application would also be considered the date of her application for spousal benefits. The evidence is unmistakable that the Plaintiff – and the two children she had with him – were not listed as possible beneficiaries on Jose Ovalle's application. Dkt. No. 43-7, p. 2. Thus, the ALJ found that there was no protective filing date in this case and this finding is supported by substantial evidence.

### C. Lead Date

The third method is a "lead" on a protective filing date. As relevant here, if a person files for retirement benefits and states that they "do not intend to file" a claim for benefits for someone who lives in their household, SSA has a duty to contact the person named to determine if they wish to file for benefits. POMS § GN 00202.020.

In other words, if the applicant states that they have someone living with them who they are not listing on the application, SSA must contact the co-habitant to determine if they are potentially eligible for benefits and if they wish to file. Id. Under these circumstances, the retirement applicant's filing date serves as the protective filing date for the person who is a "lead." The ALJ found this provision was inapplicable because Jose Ovalle did not mention the Plaintiff or their children in any form or fashion when filing his application. Indeed, at the time of the application, Jose Ovalle was not even listed as the father on his children's birth certificates.

---

[2] "POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims" that "does not have the force and effect of law," but "it is nevertheless persuasive." Davis v. Sec'y of Health & Hum. Servs., 867 F.2d 336, 340 (6th Cir. 1989).

The Court does not know and will not speculate as to why Jose Ovalle did not inform SSA about the Plaintiff or their children. But SSA does not have an obligation to follow leads that are not directly made known to them. See POMS § GN 00202.020 (noting that SSA does not have to scour obituaries to develop leads). The ALJ found that Jose Ovalle did not give SSA any leads on the Plaintiff or her children. This finding is supported by substantial evidence.

### D. Misinformation Date

The fourth method is a deemed filing date based upon misinformation. If someone inquires about SSA benefits and an SSA employee gives them misinformation about their eligibility, which discourages them from filing, a later application can be deemed retroactive to the date of the misinformation. 20 C.F.R. § 404.633. This alleged misinformation occurred in 2006 when Ovalle first attempted to file for spousal benefits. Dkt. No. 60, p. 2. A SSA representative refused to assist her, so she contacted a disability consultant who contacted SSA the following day and cleared up the confusion. Id., pp. 2-3.

The ALJ found that there was no evidence in the record that the Plaintiff received misinformation prior to her June 2006 application for benefits. While the Plaintiff alleges that she received misinformation in 2006, when a SSA employee prevented her from filing, that alleged misinformation would not entitle her to benefits dating back to 2001. Dkt. No. 60, pp. 2-3; Traggai v. Colvin, No. CV 15-1075, 4 (W.D. Pa. Oct. 6, 2016) ("evidence is not material if it does not relate to the time period for which benefits were denied"). As such, the ALJ's determination that misinformation did not prevent the Plaintiff from receiving benefits in 2001 is supported by substantial evidence.

In sum, the ALJ's finding that the Plaintiff was entitled to spousal benefits dating back to her application in 2006 was supported by substantial evidence and should be affirmed.

### IV. Recommendation

It is recommended that the petition for review of the denial of benefits filed by Azucena C. Ovalle be denied.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting those findings. If the District Judge chooses to adopt such findings without conducting a <u>de novo</u> review of the record, the parties may not attack those findings on appeal, except upon grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on October 7, 2021.

_____
Ronald G. Morgan
United States Magistrate Judge